UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CINDY LEE CHADWELL,

        Plaintiff,

v.                                    CASE NO. 3:18-cv-1205-J-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB").  Following an administrative hearing held on November 20, 2017, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from February 26, 2015, the alleged disability onset date, through December 1, 2017, the date of the ALJ's decision.[2]  (Tr. 7-19, 29-48, 140.)  Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED**.

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 12.)

[2] Plaintiff had to establish disability on or before December 31, 2020, her date last insured, in order to be entitled to a period of disability and DIB.  (Tr. 10.)

## I. Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff contends that the ALJ erred by failing to evaluate the opinion evidence consistent with the regulations, Agency policy, and Eleventh Circuit precedent. She points out that the opinions of her pain management doctor,

John Carey, M.D., are supported by the results of the Functional Capacity Evaluation ("FCE") and establish far greater limitations than assessed by the ALJ. Specifically, the opinions of the treating and examining medical sources indicate that Plaintiff would be able to perform only sedentary work, rather than light work as the ALJ determined. Plaintiff explains that a restriction to sedentary work, when considered in combination with her age, inability to perform her past relevant work, and restriction to unskilled work, would unequivocally lead to a finding of disability pursuant to the Medical-Vocational Guidelines (the Grids).

Plaintiff argues that the ALJ erred in failing to assign any weight to the opinion of Renee K. Garrett, PA-C and in giving little weight to Dr. Carey's opinions and the results of the FCE, while according significant weight to the opinions of the State agency non-examining medical consultant, P.S. Krishnamurthy, M.D. Plaintiff asserts that the ALJ's RFC assessment is not supported by substantial evidence as the ALJ erroneously relied solely on Dr. Krishnamurthy's opinions, which predated a significant part of the medical records, and the ALJ failed to consider the consistency among the opinions of Plaintiff's treating and examining sources. Plaintiff points out that the ALJ never requested an updated review of the record by a State agency consultant and did not arrange for a consultative examination of Plaintiff. Plaintiff further argues that the ALJ's credibility finding is contrary to the law and not supported by substantial evidence in the record. Defendant responds that substantial evidence supports the ALJ's evaluation of the medical opinions of record and Plaintiff's subjective

complaints.

### A.    Standard for Evaluating Opinion Evidence and Subjective Symptoms

The ALJ is required to consider all the evidence in the record when making a disability determination.  *See* 20 C.F.R. § 404.1520(a)(3).  With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight

than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam), 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* SSR 96-6p[3] (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

When a claimant seeks to establish disability through her own testimony of

_____

[3] SSR 96-6p has been rescinded and replaced by SSR 17-2p effective March 27, 2017. However, because Plaintiff's application predated March 27, 2017, SSR 96-6p was still in effect on the date of the ALJ's decision.

pain or other subjective symptoms, the Eleventh Circuit's three-part "pain standard" applies. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id.*

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that her pain is disabling through "objective medical evidence from an acceptable medical source that shows . . . a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms," pursuant to 20 C.F.R. § 404.1529(a), "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability," *Foote*, 67 F.3d at 1561. *See also* SSR 16-3p[4] (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms" to determine "the extent to which an individual's symptoms limit his or her ability to perform work-related activities").

---

[4] SSR 16-3p rescinded and superseded SSR 96-7p effective March 28, 2016, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p.

As stated in SSR 16-3p:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.
>
> . . .
>
> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.[5] The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.
>
> . . .
>
> In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related

---

[5] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures (other than treatment) used to relieve the pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

activities[.]

SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed" will also be considered "when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities." *Id.* "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the adjudicator] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.* However, the adjudicator "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* In considering an individual's treatment history, the adjudicator may consider, *inter alia*, one or more of the following:

- That the individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her stressors;
- That the individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau;
- That the individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms;
- That the individual may not be able to afford treatment and may not have access to free or low-cost medical services;

- That a medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual;
- That due to various limitations (such as language or mental limitations), the individual may not understand the appropriate treatment for or the need for consistent treatment.

*Id.*

## B.    Relevant Evidence of Record

### 1.    MRI Results

On March 13, 2015, Plaintiff underwent an MRI of the lumbar spine with and without contrast, which showed, in relevant part:

L4–5: Disc bulging slightly asymmetric to the left.  Moderate facet arthropathy with bilateral joint effusions.  No significant edema.  Mild effacement of thecal sac specially left lateral recess with posterior deviation of the passing left of 5 nerve.  Mild to moderate left and mild right foraminal stenosis.

L5–1: Mild facet arthropathy.  Disc desiccation but no significant bulging or herniation.

. . .
Incidental note is made of subcutaneous sebaceous cyst to the left of the midline at the level of L3.

(Tr. 201.)  The impression was:

1.    L4–5 mild spinal stenosis with left lateral recess stenosis and mild displacement of the passing left L5 nerve.  Correlate for left L5 radiculopathy.  Mild to moderate left and mild right foraminal stenosis at this level mostly due to facet arthropathy but also asymmetric disc bulging.

2.    Mild facet arthropathy L5-1 with early signs of disc degeneration but no bulging or herniation.

(Tr. 202; *see also* Tr. 367 (noting "disc dessication [at] L4-S1, disc bulging,

moderate arthropathy, mild effacement of thecal sac, bilat[eral] foraminal stenosis, [and] L5 nerve displacement").)

On July 18, 2017, Plaintiff underwent another MRI of the lumbar spine without contrast, which showed, in relevant part:

> L3-L4: 2 mm retrolisthesis.  1 mm broad-based disc protrusion. Minimal AP canal stenosis.  Mild bilateral facet arthrosis.  No significant foraminal stenosis.
>
> L4-L5: 1-2 mm anterolisthesis.  2-3 mm broad-based disc protrusion. Mild ligamentous hypertrophy.  Moderate circumferential canal stenosis.  Mild-to-moderate bilateral foraminal stenosis.  Probable contact with the bilateral L4-L5 exiting nerve roots.  Moderate to marked bilateral facet arthrosis.  Bilateral facet joint effusions. Findings are worsened.
>
> L5-S1: 1 mm broad-based disc protrusion.  No significant canal stenosis.  Mild bilateral facet arthrosis.  Mild bilateral foraminal stenosis.

(Tr. 370.)  The impression was:

> 1.      Degenerative change and broad-based disc protrusion at L4-L5, with associated canal stenosis and foraminal stenosis.  Bilateral facet effusions.  Findings are worsened compared to prior study.
>
> 2.      19 x 15 mm (previously 15 x 8 mm) well-circumscribed T1 hypointense and complex T2 hyperintense lesion in the left paraspinous subcutaneous soft tissues of the L2-L3 level.  Finding likely represents a sebaceous cyst[,] however, clinical correlation advised.  Given interval increase in size, contrasted MRI would be helpful for further evaluation and confirmation.

(Tr. 371.)

## 2.      Dr. Carey and the FCE

Plaintiff saw Dr. Carey with the Jacksonville Spine Center almost monthly since June 27, 2011 and even more regularly during the period under review.

(*See* Tr. 156, 367.)  On March 6, 2015, Dr. Carey opined that Plaintiff should be off work for twelve weeks due to exacerbation of her lower back pain and the results of her lumbar MRI showing herniated nucleus pulposus/stenosis.  (Tr. 156-57.)  His restrictions included no heavy lifting, overhead work, bending, or prolonged sitting/standing.  (Tr. 157.)  On July 30, 2015, he completed a Work Status Form, limiting Plaintiff to "no-work" until her next appointment on September 4, 2015.  (Tr. 193.)  He noted the following additional restrictions: no sitting for longer than two hours and no bending, climbing, stooping, pushing, pulling, overhead work, or heavy machinery.  (*Id.*)

On April 11, 2016, Dr. Carey completed a Physical Medical Source Statement ("MSS").  (Tr. 367-69.)  Plaintiff's symptoms included: back stiffness; decreased range of motion; lower extremity tingling, burning, and intermittent numbness; fatigue; depression; intermittent upper back and neck stiffness and pain.  (Tr. 367.)  Plaintiff's diagnoses included: lumbar facet arthropathy, chronic radicular lower back pain, lumbago, lumbar disc displacement and myelopathy, thoracic spine pain, lumbar stenosis, cervical disc herniation, muscle spasm, chronic pain syndrome, depression, and insomnia.  (*Id.*)  Plaintiff's prognosis was fair due to the chronicity of her condition.  (*Id.*)

In the MSS, Dr. Carey opined that Plaintiff's pain or other symptoms were severe enough to frequently interfere with the attention and concentration needed to perform even simple work tasks.  (*Id.*)  He also opined that Plaintiff could walk only 25–50 feet without rest, stand for 30 minutes at one time, and sit

for 45 minutes at one time; she could sit less than two hours and stand/walk less than two hours total in an eight-hour workday; she would need hourly unscheduled breaks lasting 15 minutes on average; with prolonged sitting, her legs would need to be elevated mid to knee level, intermittently; she would need to lie down at unscheduled times for up to an hour in an eight-hour workday; she could lift and carry less than ten pounds occasionally and ten pounds rarely; her impairments were likely to produce good days and bad days; and she would likely be absent from work as a result of her impairments or treatment three to four days per month.  (Tr. 368-69.)

On July 21, 2017, on Dr. Carey's referral, an FCE of Plaintiff's ability to return to work was performed at CORA Rehabilitation.[6]  (Tr. 377-96.)  It was noted that Plaintiff "demonstrated consistent and maximal effort during the evaluation."  (Tr. 380; *see also* Tr. 377, 382.)  Plaintiff's score on the Oswestry Disability Index ("ODI") was 60%, which equated to "severe disability."  (Tr. 386 ("Severe Disability, as defined by the ODI: Pain remains the main problem in this group of patients, but travel, personal care, social life, sexual activity and sleep are also affected.").)  Plaintiff's demonstrated tolerance for sitting and standing was 60 minutes.  (Tr. 393; *see also* Tr. 377 ("She demonstrated improved tolerance with sitting and standing when she had the ability to weight shift rather than perform statically.").)  The FCE concluded that Plaintiff should avoid lifting or

---

[6] The FCE was signed by Mike Ligmanowski, PTA, ATC, CEASI, CWcHP and Laura Bunso, PT, MTC.

carrying greater than fifteen pounds, sitting more than occasionally, and repetitive or prolonged bending; and she would need to take unscheduled breaks and change her position at-will throughout the day. (Tr. 377.)

On October 13, 2017, the evaluators submitted a letter clarifying the results of the FCE as follows:

> During the evaluation, Ms. Chadwell was tested in several positions including standing and she demonstrated an increased tolerance to standing when performing weight shifting for a total duration of 60 minutes with up to 15 minutes at a given time. As for sitting, she demonstrated ability to sit for a duration of 60 minutes during [the] evaluation but needed to change position (from sit to stand) after 10 minutes.

> In regards to the ability to change position "at-will," this means there should be no limitation on Ms. Chadwell in regards to changing position. It would not have a time requirement rather she [should] have the ability to change [her] position at any given time. "At-will" would also imply position changes including sit/stand/walk/lying [sic] down, etc. This would also correlate to her ability to have "unscheduled breaks." Due to her inability to sit or stand for greater than 15 minutes at a time, she would need the ability to take unscheduled breaks in accordance [with] her pain tolerance. It would be difficult at this time to determine her exact needs, therefore[,] breaks would be difficult to schedule in regards to the nature of her work. Based on her limited abilities in sitting/standing, this may require Ms. Chadwell to lie in a supine or side-lying position[,] or stretch[,] along with walking[,] while on this unscheduled break.

(Tr. 528.)

Upon review of the FCE and the clarification thereto, in November of 2017, Dr. Carey (together with PA-C Garrett) completed a Physical RFC Assessment of Plaintiff. (*See* Tr. 550-66.) The Physical RFC Assessment provided that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; sit

less than six hours and stand and/or walk less than two hours in an eight-hour workday; occasionally crouch and climb ramps or stairs; never climb ladders, ropes, or scaffolds, balance, stoop, kneel, or crawl; and limited Plaintiff's reaching in all directions, including overhead. (Tr. 560-62.) The results of the FCE were cited throughout, including in part two of the Physical RFC Assessment, which stated:

> The FCE dated 7/21/2017 notes . . . that Ms. Chadwell has a "high pain focus and this was evident throughout the evaluation . . . [however], based on sincerity of effort testing and physiological responses throughout, it appears she was providing maximal efforts within her pain threshold."

> Essentially, from the above statement, one can infer that although "pain" is a subjective complaint, Ms. Chadwell performed throughout the examination with good effort and sincerity, as best she was capable of. She was observed for quite some time with multiple types of testing to assess function and ability. Thus, the limitations assessed are valid.

(Tr. 564.)

### 3. Dr. Krishnamurthy

On December 10, 2015, based on a review of the records available as of that date, the State agency non-examining consultant, Dr. Krishnamurthy, completed a Physical RFC Assessment of Plaintiff's abilities. (Tr. 64-66.) Dr. Krishnamurthy opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; could sit for about six hours and stand and/or walk for about six hours in an eight-hour workday; could frequently climb ramps or stairs, stoop, kneel, crouch, and crawl; could occasionally climb

ladders, ropes, or scaffolds; and should avoid concentrated exposure to hazards.

(Tr. 64-65.)

## C.    The ALJ's Decision

The ALJ found that Plaintiff's degenerative disc disease of the lumbar and cervical spine was a severe impairment at step two of the sequential evaluation process.[7]  (Tr. 12.)  Further, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work[8] with the following limitations:

> The claimant can lift and carry 15 pounds occasionally and 10 pounds frequently.  The claimant must be allowed to alternate position between sitting and stand[ing] at least every 30 minutes. The claimant can balance, stoop, and climb ramps and stairs no more than occasionally.  The claimant can never crouch, crawl, kneel, or climb ladders, ropes, or scaffolds.  The claimant can reach overhead no more than occasionally.  The claimant must not have concentrated exposure to vibrations.  The claimant is limited to the performance of simple tasks with little variation that take a short period of time to learn (up to and including 30 days), and that have a Specific Vocational Preparation (SVP) level of 1 or 2.  The claimant is able to deal with the changes in a routine work setting.

(Tr. 13.)

In making this finding, the ALJ discussed, *inter alia*, Plaintiff's subjective complaints, the objective medical findings, the treatment records, and the opinion evidence.  (Tr. 13-17.)  After considering Plaintiff's complaints, the ALJ found that

---

[7] The Commissioner employs a five-step process in determining disability.  *See* 20 C.F.R. § 404.1520(a)(4).

[8] By definition, light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; it requires a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. § 404.1567(b); SSR 83-10.

Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 14.)  The ALJ then considered Plaintiff's examination findings, results from objective diagnostic tests, and medical opinion evidence.  (Tr. 14-17.)

Upon review of the medical evidence, the ALJ found the evidence did not establish that Plaintiff's impairments were disabling in nature or prevented her from performing work in accordance with the RFC assessment.  (Tr. 16.)  The ALJ explained:

> The evidence primarily shows some tenderness and limitation of motion in her lower back and legs, but does not establish that these conditions prevent her from performing all work.  Other spinal and musculoskeletal findings are largely normal.  The evidence does not establish that she experiences symptoms which are typically associated with a disabling level of severity, such as significant limitation of motion, positive straight leg raise testing, nerve root compromise, and/or an altered gait.  She is not shown to require an assistive device to ambulate, and she is also not shown to have strength or sensation deficits.  Diagnostic imaging has also not demonstrated the presence of a condition which would be expected to preclude her from performing all work.  Taken as a whole, her impairments are not shown to be productive [sic] of a level of functional limitation that precludes the performance of all basic work activities, as is required for a finding of disability.
>
> Further, . . . the claimant testified at the hearing that she remains capable of performing a variety of activities, including doing some household chores[,] such as dishes, laundry, cooking, and grocery shopping.  She is able to drive, and she is capable of bathing and dressing herself independently.  Such abilities and activities are consistent with an ability to perform competitive work.

(*Id.*)

Additionally, the ALJ found that "the credible medical opinions of record" did not suggest that Plaintiff was disabled or incapable of performing work consistent with the RFC assessment. (*Id.*) The ALJ stated:

> The opinions of Dr. Carey are given little weight, as they are not consistent with his treatment notations or the other medical evidence of record. Some weight is given to his opinion provided in November 2017, but it is not fully consistent with his treatment notations and the rest of the medical evidence of record. Little weight is also given to the functional capacity evaluation performed in July 2017, as it is not consistent with the medical evidence of record as a whole. Significant weight is given to Dr. Krishnamurthy's opinion, as it is more consistent with the other objective medical evidence of record and the limited findings on medical examinations. The limitations that are supported by the evidence have been taken into account in the [RFC] assessment, which provides for light exertional work with a sit/stand option and includes restrictions for postural activities, manipulative activities, and environmental conditions, and also limits the type of work the claimant is to perform.

(Tr. 16-17.) After considering the combined effect of Plaintiff's impairments, the ALJ concluded that the RFC assessment was "supported by the objective medical evidence, including [Plaintiff's] treatment records and the credible medical opinions of record." (Tr. 17.)

Then, at step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.*) At step five, after considering Plaintiff's age, education, work experience, and RFC, as well as the testimony of the vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as the jobs of office helper, ticket seller, and counter clerk. (Tr. 18.) As noted in the ALJ's decision, all of these representative occupations are light duty, unskilled jobs with

an SVP of 2.  (*Id.*)

### D.    Analysis

The Court agrees with Plaintiff that the ALJ's RFC assessment is not supported by substantial evidence.  First, the ALJ improperly evaluated the opinion evidence.  The ALJ gave significant weight to Dr. Krishnamurthy's non-examining opinion because it was "more consistent with the other objective medical evidence of record and the limited findings on medical examinations." (Tr. 17.)  However, in December of 2015 when Dr. Krishnamurthy issued his opinion solely based on a review of an incomplete record, he did not have the benefit of reviewing, *inter alia*: (1) the results of the July 18, 2017 lumbar MRI, which expressly noted worsening compared to the prior study; (2) the results of the July 21, 2017 FCE; (3) Dr. Carey's April 11, 2016 MSS and his November 13, 2017 Physical RFC Assessment; or (4) the multiple treatment records generated after December of 2015, which seemed to corroborate Plaintiff's complaints of pain and other disabling symptoms.

Importantly, in according significant weight to Dr. Krishnamurthy's opinion, the ALJ did not explain what objective medical evidence and examination findings he was referring to.  In the absence of such an explanation, it is impossible for the Court "to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence," particularly since the ALJ decided to give little weight to the treating and examining opinions in the record.  *Winschel*, 631 F.3d at 1179 (also stating that "when the ALJ fails

to state with at least some measure of clarity the grounds for his decision, [the Court] will decline to affirm simply because some rationale might have supported the ALJ's conclusion") (internal quotation marks omitted).

The ALJ was just as vague when he gave little weight to Dr. Carey's treating opinions as "not consistent with his treatment notations or the other medical evidence of record," and to the results of the FCE as "not consistent with the medical evidence of record as a whole." (Tr. 16-17.) Although the ALJ purportedly gave some weight to Dr. Carey's November 2017 Physical RFC Assessment, he did not explain which findings were credited and which findings were rejected (and why), and implied that he did not adopt the RFC because it was "not fully consistent with [Dr. Carey's] treatment notations and the rest of the medical evidence of record." (Tr. 16.) As shown above, the ALJ's reasons for weighing the medical opinion evidence—both the opinions that he rejected and the opinions that he credited (or purportedly credited)—were too vague to allow for a meaningful review.

In any event, the ALJ's statements that Dr. Krishnamurthy's opinion was more consistent with the objective medical evidence and the examination findings, and that the treating and examining opinions were not consistent with the treatment notations and the rest of the medical evidence, are not supported by substantial evidence. The examination findings were not as limited as the ALJ seems to suggest. The examinations revealed, *inter alia*, neck pain and stiffness, mildly antalgic gait, radiating back pain, intermittent leg numbness,

19

decreased range of motion, muscle cramps and pain, joint pain and stiffness, tenderness to palpation in the left and right paraspinal musculature, and a positive facet loading test (with extension). (*See* Tr. 253, 322, 329, 359, 401-02, 407-08, 411, 418, 421, 426, 438, 463, 467, 472, 483, 515, 521-22; *see also* Tr. 448 & 456 (noting "pain with percussion over L4 spinous process, pain with percussion over L5 spinous process, and left and right paraspinal musculature tender to palpation"); Tr. 456 (noting that the range of motion in the lumbar spine was "grossly limited and with pain").)

Further, the treatment records consistently demonstrated severe, or at least moderate, pain levels. (*See* Tr. 246, 249, 253, 256, 264, 267 & 475 (noting a pain level of 10/10); Tr. 322, 407, 443 & 447 (noting a pain level of 9/10); Tr. 243-44, 260, 318, 325, 329, 401, 404, 411, 421, 438 & 513 (noting a pain level of 8/10); Tr. 359, 419, 426 & 455 (noting a pain level of 7/10); Tr. 258, 479, 482 & 486 (noting a pain level of 6/10); *see also* Tr. 476 (noting severe, non-radicular pain unresponsive to conservative management).) The records also reflected that Plaintiff's symptoms were exacerbated by prolonged sitting, standing, and walking; stooping; flexion; extension; rotation; and increased activity in general. (*See* Tr. 258, 403, 413, 443, 447, 455, 463, 467, 472, 479, 482, 486; *see also* Tr. 430 ("Pain is controlled if activity is controlled.").) The pain interfered with Plaintiff's daily activities. (*See* Tr. 438, 443, 447, 455, 479, 482, 486.)

In addition, the abnormal MRIs of the lumbar spine were consistent with the examination findings and the reported symptoms. (*See* Tr. 201-02 (noting,

as of March 13, 2015, disc bulging, moderate facet arthropathy, and mild to moderate left and mild right foraminal stenosis at L4-5 with mild displacement of the passing left L5 nerve, among other findings); Tr. 370-71 (noting, as of July 18, 2017, "worsened" findings compared to the prior study, including, *inter alia*, degenerative change and broad-based disc protrusion at L4-L5 with moderate canal stenosis and mild-to-moderate foraminal stenosis, probable contact with the bilateral L4-L5 exiting nerve roots, and moderate to marked bilateral facet arthrosis); *see also* Tr. 243 (noting that the MRI showed disc herniation and degenerative disc disease); Tr. 255 (noting that the MRI was abnormal); Tr. 260 (noting that the MRI showed significant synovitis at L4/5, herniated nucleus pulposus with bilateral neural foraminal stenosis at L4/5, and degenerative disc disease at L5/S1).)

In light of those findings, Plaintiff was diagnosed with, *inter alia*, chronic pain syndrome, lumbar stenosis without neurogenic claudication, lumbar facet arthropathy, lumbago, chronic radicular pain in the lower back, muscle spasm, disc displacement in the cervical and lumbar spine without myelopathy, herniated disc in the lumbar spine, sciatica, and lumbosacral spondylosis.  (*See, e.g.*, Tr. 243, 399, 414, 422, 427-28, 431.)  Plaintiff's treatment included: daily use of a back brace, nonsteroidal anti-inflammatory drugs, steroids, non-opioid analgesics, opioid analgesics, ice, physical therapy, a home exercise program, epidural steroid injections, nerve root block and facet joint injections, radiofrequency denervation, and lumbar facet rhizotomy.  (*See, e.g.*, Tr. 243,

256, 331, 403, 413.)

As the records reflect, Plaintiff has failed conservative treatment and is not a surgical candidate because the stenosis is in several different parts of her back, leading her to modify her behavior and continue with the other treatment modalities, alternating the location of the injections, which results in only "transient" or "fair" relief. (*See, e.g.*, Tr. 42, 243, 246-47, 249, 254, 256, 261-67, 318-30, 360, 402, 409, 413, 419, 434-35, 475, 484; *but see* Tr. 477 (noting 70% improvement); Tr. 452-53 (noting 60% improvement).) Although Plaintiff saw improvement with some of her treatments, her symptoms returned and were noted to be inadequately controlled, even worsening, which was confirmed by the sheer number and frequency of her doctor's visits and treatments. (*See* Tr. 445, 449-50, 457-58, 515; *see also* Tr. 475 (noting that although Plaintiff experienced "excellent pain reduction" after the April 6, 2016 radiofrequency lesioning, her recurrent mechanical lower back pain was 10/10); Tr. 513 (stating that the ablations, injections, and nerve blocks brought only "minor improvements in pain"); *but see* Tr. 405 ("Excellent long term pain relief from the bilateral lumbar facet radiofrequency lesioning treatments done last in [May of 2015] with some recurrent symptoms despite interval conservative therapies . . . .").)

Based on the foregoing, the ALJ's reasons for largely discounting the treating and examining opinions in the record were not only vague, but also seemed unsupported by substantial evidence. To the extent the ALJ relied on Dr. Krishnamurthy's December 10, 2015 non-examining opinions, those opinions

predated a substantial part of the medical record, including several diagnostic test results, the FCE, and a large part of Dr. Carey's treatment records and opinions. Because the Court concludes that the ALJ erred in his evaluation of the medical opinions, the Court will not separately address Plaintiff's arguments regarding the ALJ's assessment of her subjective complaints. Nevertheless, the Court notes that it was improper for the ALJ to conclude that Plaintiff's limited participation in certain daily activities, including household chores, was consistent with the ability to perform competitive work. The performance of such limited daily activities is not necessarily inconsistent with allegations of disability. *See, e.g.*, *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985) (per curiam) (reversing and remanding the case to the Commissioner for lack of substantial evidence to support the finding that the claimant had no severe impairment, even though the claimant testified that she performed housework for herself and her husband, accomplished other light duties in the home, and "was able to read, watch television, embroider, attend church, and drive an automobile short distances"); *White v. Barnhart*, 340 F. Supp. 2d 1283, 1286 (N.D. Ala. 2004) (holding that substantial evidence did not support the decision denying disability benefits, even though the claimant reported that she took care of her own personal hygiene, cooked, did housework with breaks, helped her daughter with homework, visited her mother, socialized with friends sometimes, and, on a good day, drove her husband to and from work, but needed help with grocery shopping, and could sit, stand, or walk for short periods of time). Therefore, this

case will be reversed and remanded for further proceedings.

Accordingly, it is **ORDERED**:

1.     The Commissioner's decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ to conduct the five-step sequential evaluation process in light of all the evidence, including the opinion evidence from treating, examining, and non-examining sources, and conduct any further proceedings deemed appropriate.

2.     The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3.     In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012).  This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on March 2, 2020.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record